Good morning, your honors. May it please the court. Alyssa Bell on behalf of Appellant Luis Santos. And I will also be mindful of the clock and try to reserve two minutes for rebuttal. Your honors, this case is but one in a series where the government disclaimed any reliance on Deputy James Peterson, although he was the only possible affiant to the key events and interactions that took place during the traffic stop. And I want to make clear that that decision had consequences in terms of the record that is before this court. The record does not include any inferences that the government would ask this court to draw on Deputy Peterson's behalf. It includes only what the video shows. So no consideration of any testimony or the police report, correct? That's correct. In fact, there was no testimony. There was no evidentiary hearing held and no testimony submitted. And that is because the government chose to forswear any reliance upon Deputy Peterson as a credible witness. So I did want to make clear at the outset exactly what the state of the record is. I'm sure that your honors have reviewed the video. And our position is that clearly Mr. Santos's vehicle does not cross traffic lanes. And that's why the district court assumed for the purposes of decision that there was no reasonable suspicion. There is no traffic violation visible. There also is no swerving within the lane. There's no moving to the side of the lane for 10 seconds. The video simply does not show that. Now second, and this is an important element, the I-5 is not a known drug trafficking corridor. There was no testimony to that effect. There's no way for this court to understand or to assume that Deputy Peterson thought that. And the fact itself is not self-evident. And as I cited in Elias, another district court evaluating a similar claim, in fact, found the opposite, that the I-5 is not a drug trafficking corridor. And in fact, thousands of law-abiding people travel there daily. The small quantity of cocaine that was found in Mr. Santos's pocket is not a fact that the court can consider in its analysis because it is fruit of an unlawful frisk. The government created no record below from which this court could infer that Deputy Peterson believed Mr. Santos was presently armed and dangerous. The fact that Peterson initiated a stop alone at night on a vehicle with more than one occupant cannot supply that reasonable suspicion that he was presently armed and dangerous. And I would point the court towards Raygosa Garcia, where the Ninth Circuit was very careful to say reasonable suspicion cannot be based on generalizations that would apply to vast swaths of the law-abiding population. Well, the main issue, as I see it here, is whether the voluntary flight by the passenger attenuated any taint, assuming that it was a bad stop, that it was not supported by reasonable suspicion. Can you address that? The district court made a finding that the co-defendant's flight and subsequent crash constitute an intervening circumstance. If we determine that the video is susceptible to possibly different inferences about the flight, do we defer to the district court's view of what the video shows? No, Your Honor. That is a legal question. That's the second brown factor. The second is the presence of an attenuating intervening circumstance, and the third is the flagrancy of the police conduct. So it's de novo review of the district court's decision in that regard. To the extent this court were to find that there are real fact-bound questions, because there are fact-bound questions. The video itself is not exactly sui generis. For example, the district court found that the manner of flight was so inherently dangerous that it created independent probable cause. Well, we know very little. I think that's what I was trying to get to, and perhaps I phrased it imperfectly. But I think one of the key questions here is whether there was erratic flight. That sort of heightened the danger of the situation and basically would then help to furnish the probable cause for the subsequent search. If that's susceptible to different interpretation and the district court went one way, don't we defer to the district court's view of those inferences that can be drawn from this record? No, Your Honor, and that's because the district court was reaching a legal conclusion. The district court made no factual findings. To the extent this court would rely on a fact-bound inquiry and would base that in disputed facts, a remand would be required for the district court to hold an evidentiary hearing and to hear testimony. For example, Peterson and perhaps Vann know at what speed the car took off from the highway. What we can see from the video, I would contend,  at a rather average rate of speed. There's no squealing tires. It doesn't seem to be going at a higher rate of speed than the cars around it. It seems to be merging reasonably. The incorrect blinker is illuminated. That much is true. We know that the car was only on the road for a very brief period of time before the driver and the passenger abandoned it and fled on foot. That would seem to be significantly less dangerous than the cases where this court has found that the manner of flight itself created probable cause and therefore broke the causal chain. And let me take a step back and address just the question of voluntariness. The Supreme Court was clear in Brown that an intervening voluntary act, in that case, a confession, does not break the causal chain merely because it is voluntary. And voluntary act can still be the fruit of an unlawful police Fourth Amendment violation. The question here is how attenuated are we on the chain? And here, I would contend there's no attenuation at all. First, there's an unlawful stop followed by an unlawful frisk, followed by Peterson engaging in an escalating course of conduct. He uses profanity. He uses force against Mr. Santos to shove him into the police vehicle. That's heard clearly on the video. And it's only then, immediately, that the passengers take off. It would be, to borrow something for the case law, the parlance, it would be a sheer fiction to say it was a coincidence that the passengers took off. Rather, it was the direct result in an unbroken causal chain from Peterson's misconduct. Garcia and McClendon, which are the primary cases upon which the government relies, are really readily distinguishable. In Garcia, for example, there is much more than flight. Both the Supreme Court in Ward Law and this court in both of those cases and others has required flight plus, oh, I'm sorry, has required flight plus because there must be flight plus an additional circumstance that shows an indicia of probable cause that a particular crime is happening and evidence will be found somewhere in that vehicle. In Garcia, there is a stop at a border checkpoint in a vehicle that's associated with human trafficking. The driver fails to slow, fails to make eye contact even when border patrol is speaking to him directly. He pauses only briefly when he is detained at secondary inspection and then takes off and leads officers on a 70 mile per hour chase over ill-maintained roads. There is a, there are both, well, there are two things we can draw from this. One, there were many factors that would yield independent probable cause and second, there's an intervening act which is the taking off. The officers did nothing to induce that. The officer referred the driver to secondary inspection, full stop. That's simply of a different character than Deputy Peterson's misdeeds here and before I sit down, I'll very briefly address McClendon because the key fact in McClendon is the unlawful Fourth Amendment violation is the search of the backpack. At the time that the officers approached McClendon with guns drawn and tell him that he's under arrest, that is a lawful police action. They have independent probable cause, even putting the backpack search to the side to arrest him. McClendon doesn't know about the backpack search and the officers are not exploiting that Fourth Amendment violation in any way. It's for that reason that this court concluded that there was not even but for cause, let alone proximate cause. And I'll reserve the balance, thank you. Thank you. Let's hear from the government. David Ryan. Good morning, your honors. May it please the court. David Ryan on behalf of the United States. This court has repeatedly held that flight from an unlawful stop, whether a traffic stop in Garcia, an arrest in McClendon, or a Terry stop in Coleman, attenuates or breaks the causal chain between that initial unlawful stop and a post-flight discovery of evidence. As this court held in Garcia, because or where there is no indication that the stop, the unlawful stop, was quote, designed to lure suspected criminals into flight, officers do not exploit the initial stop when they discover evidence after and because of the flight. And that's the crucial question, whether the officers obtained the evidence at issue, here the methamphetamine inside the tire, by exploiting the unlawful stop. Does it make a difference that the flight is by a third party, as opposed to Mr. Santos, who was secured in the backseat of the officer's car? In this case, it does not, your honor. The reason for that is because the passenger, the third party, was also detained for purposes of and during the traffic stop. So if it were the case that the person who fled were not actually detained, they were an onlooker or a civilian who was not part of that detention, then the flight would not be an intervening act because they were not detained, so they were not fleeing. And that was, in fact, the argument that defendant relied on exclusively below in the district court, arguing that the passengers were not detained, therefore there was no flight, therefore there was no intervening act. As the district court found under Supreme Court case law, primarily Brendlin, all passengers in a traffic stop are detained during the stop until they're informed that they're free to go. That clearly had not happened here. On the contrary, the officer was repeatedly yelling at the passengers to remain still and in the car, and the passengers were repeatedly trying to escape, first by exiting the car, and then by jumping over the center console and fleeing back out onto the road. If I recall correctly, the facts in Garcia were much more egregious, including a high-speed chase, driving a car with an obviously beat trunk. Here in this particular case, other than the fact that the blinkers weren't signaling properly, what are the indications in the record of an erratic flight or dangerous flight? I couldn't tell whether there were any cars. There didn't seem to be any cars speeding along, so I'm not sure that the district court's analysis in terms of the dangerousness is really supported by the video evidence. Yes, Your Honor, I believe this question goes to the probable cause question as opposed to whether or not the flight was an intervening act, just as a preliminary point, because in McClendon, for example, the act of merely walking a few steps away from the police was found to be an intervening act, so I don't think you need erratic, dangerous flight in order for the flight to be an intervening act. However, in this case, the video, I believe, does show that it was an erratic, dangerous flight, or more to the point, the district court did not clearly err in making that factual finding, and I believe that is a factual finding. Whether or not the flight gave probable cause or was an intervening act is a legal conclusion, but the district court's analysis of the video and whether it shows erratic, dangerous driving is a factual finding that is entitled to deference. What the video shows is that the passenger, after having been told twice not to get out of the car or move, didn't get out of the car and walk around to the driver's side door and open the door and drive away. He jumped over the center console, and with the officer running after him and yelling at him to stop, merged left onto the freeway with the right turn signal still blinking. I believe you can see, certainly while the traffic stop is ongoing, you can see in the left side of the video, cars going by. There was not any heavy traffic, so cars were going at a freeway speed, you know, somewhere upwards of 60, 70, 80 miles per hour. And this was not late at night, in the middle of the night, where there were no cars there. I believe you can see cars going down the freeway throughout the traffic stop. We know that the car then crashed approximately two miles, two minutes down the road, coming to rest over 100 feet off the freeway in a ditch. The passenger who had jumped into the car was on the side of the road, had either been expelled from the car or after the crash tried to continue fleeing on foot. And we know that the other passenger who was in the car is nowhere in the video, had disappeared and was never found. So the question is... Do we know whether it was a crash or it was voluntarily abandoned and does it make any difference? I think the... I don't... It is not 100% clear, correct, whether it was a crash or voluntary abandon. However, I think you can see, or the district court could fairly conclude in the video, that the car was damaged in the ditch. So it was not gently parked off the side of the road. It had rammed into a ditch coming to rest and you can see damage to the car in the record. However, the continued flight after the crash can also be considered in determining the erratic and dangerous nature. Something caused either the car crash or the subsequent on-foot flight, the passenger to be severely, severely injured as part of his continued flight. As a result of that erratic, dangerous flight, both in the car and on foot, the district court did not clearly err in determining that that was erratic, dangerous conduct and then did not err in concluding that gave probable cause to search the car, both to find the missing passenger, identification as to who those people would be, or as this court held in Roberts, what they were trying to conceal by fleeing. Once officers searched the car, they developed further probable cause to search the tire and cut open the tire in the trunk of the car. Because as Deputy Vann stated in his undisputed declaration, and I would point out that the record does not contain merely the video. The record also contains a declaration of Deputy Vann, which was undisputed below. Defendant did not request an evidentiary hearing to cross-examine Deputy Vann. After the government said that the court could assume for purposes of argument the unlawful traffic stop, the defendant did not dispute the declaration of Deputy Vann or any of the untainted post-flight facts that either he described, that were shown in the video, or that were in the police report, which the defendant himself put into the record. Only for the first time on appeal does defendant seek to contest the declaration of Deputy Vann or the post-flight facts set forth in the police report. Your Honor, what was the probable cause to search the car once it was either abandoned or crashed, whatever happened to it? Not so much the trunk, but the initial search where I think there's methamphetamine, other things found. The basis for the probable cause to search the car was primarily as the district court held the manner of the flight from law enforcement, which the Supreme Court held in Wong Son creates, quote, strong evidence of guilt, and which this court in Roberts, Garcia, and Rodriguez-Alvarado has held can provide probable cause to search the fleeing car. What the search would be for in this case is, among other things, initially, the crime of fleeing from a law enforcement officer. These are California state officers, and they have two individuals who fled from a law enforcement officer in violation of California law, and they're looking for the second guy. Officers are looking for the second guy who could be in the passenger compartment. He also could be in the trunk. There also could be identification documents about who were these people who engaged in that illegal flight from law enforcement, as well as evidence of what they were trying to conceal when they did flee. Wong Son, I think, is instructive because there the Supreme Court held that flight from law enforcement did not provide probable cause to pursue the defendant and then search the room that he fled to because the officers hadn't clearly identified themselves as police officers, so the Supreme Court held it was ambiguous whether the person was actually fleeing, in which case the flight would create a strong evidence of guilt, or whether he was merely running away because he had an armed man standing at his door demanding to be let in. This case presents no such ambiguity. Of course, the officer had clearly identified himself as an officer. The traffic stop had been ongoing for approximately two minutes before the passenger ultimately decided to flee. If the court has no additional questions, we'd submit. Judge Fischer? No, thank you. All right, thank you very much, counsel. Thank you, Your Honor. Thank you. Your Honors, the fact of flight itself does not supply probable cause. The Supreme Court was careful to explain that very premise in, that very point in ward law, stating that especially in communities of color, there may be good reason for people who are entirely law-abiding to get away from the police, and here we have a situation where the objective facts, to the extent that they are there, what we can see on the video, is Peterson engaged in a series of Fourth Amendment violations, followed by a physical, a use of force against Mr. Santos, and only at that point do the passengers take off. And the question is, was that inducing? And we clearly think it was. I'd like to point the court to Excerpts of Record 4, and this is where the district court analyzes what the video shows. And when the district court is analyzing the manner of the flight, it says, Santos's co-defendant fled at night with the right signal flashing while merging onto the interstate where large cars and trucks were traveling at high speeds, and crashed the vehicle 100 feet off the interstate and fled on foot. The first of those facts are entirely innocuous. Essentially, it's merging onto a highway with the wrong blinker illuminated. There's nothing particularly erratic or dangerous about any of those facts. And if this court is going to turn its decision on the crash and on what could be observed of the car during the crash, I would submit that a remand for further fact-finding would be necessary here. However, I would remind it is the government's burden. It was the government's burden to create a factual record for this court in the first instance, and the government chose not to do so because it had an unreliable affiance. So the purposes of the exclusionary rule would be fulfilled by finding suppression adequate here. All right, thank you very much, counsel. Thank you. The matter is submitted for decision by the court.
judges: Cole, Fisher, Nguyen